this morning is number 08-3359 Brady against the United States Postal Service. Mr. Fisher. Good morning, your honors. May it please the court, I'm Morris E. Fisher for Mr. Brady here this morning. Your honors, this case boils down to three actions and that the defendant that Mr. Brady is alleged doing, all three of them are defendable and he should not have lost his job with the government. The first one had to do with the Barnes alarm systems and this was the issue that Mr. Brady was on leave and Mr. Brady allegedly had worked and he had worked at this other job, the Barnes alarm systems, on several days and the administrative judge erred in that he didn't consider the weight of the evidence. But isn't that precisely the kind of question that's difficult to get overturned on appeal given our standard of review? The A.J. here, when you take issue with some of the credibility determinations were made, as you said, you're arguing over how the evidence was weighed and isn't it difficult given our review here at the appellate level for you to prevail on those kinds of It is true that, generally speaking, credibility is left for the A.J. However, when the evidence is overwhelming that the petitioner was not there, and I'll get to why that is, there are documents that contradict hearsay. All they had was hearsay. Well, hearsay is admissible at this proceeding and at this level, correct? Correct, but just to set the stage here, the A.J. weighed not only live testimony against hearsay by a receptionist who was there less than a month and whose duties involved making appointments, but the actual words of what she said and even the hearsay itself, it didn't make sense. She said that the person is scheduled three months in advance and there was no evidence at all that he was there. In fact, there's a compliance report on page 31 of the record where the investigator did a compliance, did a report and found that the work that allegedly he had done was done a month earlier and there's no payroll record that says that he worked the full day, only that he worked four and a half hours. So when you take all of that evidence, the credibility finding has to have some basis of rationale and here he didn't have that at all because the compliance report itself is a public record, which they found. So when the A.J. didn't consider that, that was reversible. The other two issues in the case have to do with missing these investigative interviews while Mr. Brady was on Family Medical Leave Act. He was advised by his doctors to stay away from the work environment at the Postal Service. So what had happened is... I mean, he didn't come and say, please, I've got all these reasons why I can't come. He never responded at all, did he? On one of the occasions, which ironically is one of the twists of this case, Your Honor, he had gone down to the post office on August 7th because he had received a notice, come down, pick up this express mail, and that was one of the notices to come to the interview. That essentially, in the record, is the whole story of what had happened when he had gone down there. Apparently they had lost it. But even if we're going to say that, he was on Family Medical Leave Act. I've studied the case law that my adversary has cited. There is no case that I have found that they have cited which says that in a federal case like this, before MSPB, that someone has the obligation to do these things, that an employee has to do these things. They cited the Lowery case, which is distinguishable only because it's an issue in Lowery, is whether they had, whether the defendant had violated FMLA rights. It's not a government case. I'm not clear on your point. Your point is because he was on FMLA leave, he was not required to attend. That's right. And he attempted to, at least on one of the occasions where he had gone down. And your reason for why he didn't have to respond is what? That he's no longer an on-duty employee and therefore he doesn't have to comply with those requirements? Yeah. He's advised by his doctors to stay away from that environment. Well, to me, it seems to me that those are two different things. If there's a medical reason for him not to attend, then that might be another issue. But with respect to that issue, it seems to me that he was obligated to tell them. I mean, when he gets his notice to come to this interview, does he respond? Does he send them a letter or call them and say, look, I can't show up because my doctor has advised me not to come because it would be detrimental to my health? Did he do that? He didn't do that. But what he had done is he had sent letters from his doctor prior to explaining this is anxiety, this is what we the doctors are advising this man to do. Not to go to the, not to be involved in this stressful environment. Clearly going down to... Well, is there any reason that he didn't respond at all? He said that there was an issue in the case whether he had notice of this. And evidenced by this August 7th altercation that he had, where he had gone down there, he had said, I got this express mail, where is it? They shuffled them around and he wasn't able to get it. So there is that. But overall, and also this is a man who had lost his house in a hurricane and there were some issues with him receiving mail. So that, and even in the Petalios case that my adversary cites, that was only a suspension. The person only got 30 days. He didn't get removed because of that. And finally, the thing with the envelope, the issue with the envelope was there is case law on that, that there was no harm that was done to Mr. Galvis. That he sustained no injuries. He didn't see it coming. He sought no medical attention. You know, he was not physically put in any sort of fear. It was an envelope that he flipped it at the guy. There's a case that's cited by my adversary, Omedes v. USPS, where there was a half a can of soda that the employee had thrown at a supervisor. And even that case was 45-day suspension only. Arguably, a half a can of soda is something that essentially could hurt somebody. This was a piece of paper that it didn't hurt the guy. So there's just, in total, when you look at the Douglas factors, you look at all of the years of service that the man had, ultimately the question is, why was this such a horrendous situation with the employee who is on FMLA, who has reasons why he can't comply with things. He goes down there to pick up a notice. He's frustrated about it. And he loses his temper, but not to the point where he has any criminal behavior against him. There's nothing in the record that suggests that he was arrested, that he was convicted of any crime, and there was no harm that was done. Ultimately, the punishment here, given the circumstances, is simply outweighed. It's simply too great for the conduct that he had. And nothing further. I'll reserve the rest of my time. Okay, we'll save your time for rebuttal. Mr. Fisher, thank you. Mr. Falk. Thank you, Your Honor. May it please the Court. Your Honors, there's substantial evidence to support Mr. Brady's removal on all three of the counts that are at issue here. Well, Mr. Falk, isn't the real question of whether the penalty was too extreme, even accepting that the worst, that he didn't turn up when requested to come to this investigative interview, and that he threw a crumpled up piece of paper at his supervisor, whether that warrants removal, firing, as opposed to some extended suspension is the difficulty, isn't it? I don't believe it is, Your Honor. First of all, this Court typically defers to the agency's penalty determination, unless that penalty is so harsh and unconscionably disproportionate to defense that it amounts to an abuse of discretion. I fail to see how this is an abuse of discretion. The deciding official looked at all the evidence, looked at the Douglas factors, looked at the fact that there was no remorse, Mr. Brady did not seem apologetic about this, and came to the conclusion that based on these multiple factors and lack of remorse, that there was very little potential for rehabilitation for Mr. Brady. The deciding official looked at the impact on the service from misusing sick leave, from acting in a very threatening and disrespectful manner to one's supervisor in the workplace, and then from refusing to cooperate at all with an investigation into these two events. And the deciding official... Well, let's not overstate it. He didn't turn up for the investigative interview. You say this is refusal to cooperate at all. He was on medical leave. He'd lost his house in a hurricane. There are all sorts of extreme circumstances surrounding this behavior. Your Honor, what the government wanted was an incredibly minimal level of cooperation, as the administrative judge found in his opinion. The judge held that at a minimum he had a duty to apprise the agency of his situation. If he had called and said, you know, I'm not feeling well, could we please wait until I'm better to come in for an interview, that may very well have been enough. Well, people under stress don't always react rationally. I agree this would have been better, but it didn't happen. And the question is, is that grounds for firing a long-time employee with, according to what we've seen, nothing adverse on his record? I would say it is, Your Honor, particularly in light of the fact that this was for an investigation into two other serious incidents. Mr. Brady should have realized the seriousness of the situation and had an obligation to notify his superiors of his availability, to let them know in some way when he could be available, under what conditions he could be available, something like that. And just for the record, opposing counsel indicated that Mr. Brady was not informed of these. At the hearing, Mr. Brady stipulated that he had, in fact, received notice of these. That's at page 176 of the appendix. It was from the hearing transcript. Yes, furthermore, there's several other things involving that, the issue of the penalty, particularly that I want to discuss relating to the issue of Mr. Brady's medical condition. Mr. Brady was, in fact, absent for 60 days from work because he was recovering under FMLA leave. He had FMLA leave from his doctor, and the doctor's note on that was very specific. It said Mr. Brady should avoid the work environment. It did not say that Mr. Brady is unable to communicate with other postal employees. It did not say that he is unable to respond in any way to requests for an interview. It didn't even say that he was unable to be interviewed even off postal grounds, for example. Well, it was a general statement. In retrospect, we could rewrite that statement in view of what actually happened. He was told, keep away from this environment. That's all. To give someone two months of leave, there must have been extreme examples of stress behind that. Your Honor, we have simply to go on with the note that the doctor gave, and that was that he should be excused from work and from working in a postal environment for 60 days. It didn't say anything about his ability to interact with his supervisors. It didn't say anything about his ability to answer questions. That was exactly my point. If one could have foreseen the future, it might have been more specific. Instead, there's a general statement of keep out of this environment that's making you sick. Possibly, Your Honor. We don't know that. We do know that the limit of the evidence is that the doctor— We know what it says. We do, Your Honor. That's really what I was trying to probe, is a general statement. I understand, Your Honor. Avoid this environment. I understand. You're saying it should have said all sorts of things sort of in a kind of prescient foreseeing of the specific incidents that might happen in these two months and tell them how to react in them. Possibly, Your Honor. Again, we have only to go by what we have. The supervisor is part of the environment. The supervisor was part of the environment. He's part of the environment, right? He's a part of it. However, the note was a bit more broad than that. I'm sorry, actually more narrow than that. It indicated that he should not be at the work environment. There could be a lot of reasons Mr. Brady might not be able to attend work but, for example, could still attend an investigative interview. For example, being at work requires a much longer interaction with the postal environment. There's perhaps a good reason that he wasn't able to put in a full day's worth of work. However, I would submit that's a very different situation from being required to show up for a 15-minute interview or even to call the supervisor and say, I won't be able to be there for an interview and could we please postpone it. I want to also get to the issue of credibility-based determinations. Two of the charges against Mr. Brady were upheld specifically by credibility. As this court has held, such determinations are only challengeable when they are inherently improbable or discredited by undisputed fact or physical evidence. The opposing counsel mentioned documentation that made it clear that the hearsay testimony should not have been accepted. The government argues that, first of all, the documentation provided actually supports our position. We believe that the fact that the one timesheet that was in question simply had Tuesday and Wednesday written in for the days that Mr. Brady is alleged to have worked, whereas all the other timesheets actually had dates on them, indicates that those were the actual days that he worked, which are the dates that the government believes he was working on while collecting sick leave. Second of all, at an absolute minimum, this timesheet is not undisputed fact. It is highly disputed between the two parties as to what the meaning of it is. The government believes it supports our position. Mr. Brady believes it supports his. At a minimum, that is not undisputed. That's all I have unless the court has further questions. Any questions? Okay. Thank you, Mr. Falk. Thank you very much, Your Honors. Just a couple of brief points here. I think the thing that this case really is about, and I think Judge Newman kind of captured it with her questions, is if this man has broken his leg, okay, and it was crushed, and he's part of an investigation, come on down here, and he doesn't take any action about it, I think that's a much different case. I think in that case is the person, look, get a wheelchair or call up, whatever. In this case, the very illness is the thing that they want him, the cause of the illness is the thing that they want him to ignore. They want him to say, even though, you know, we caused this anxiety and stress for 60 days, you know, to recover, I have to relax and be away from this environment. No, we're stopping this. We don't want you to relax. We want you to come down. And there's nothing in the record why they couldn't have done this after 60 days. And I think that's really the key point in this case is that the issue here is, are we going to extend this employee has to do anything now for 60 days, or when I'm an employee and I get a note from my doctor that says, stay away from this environment for 60 days for your own health, do I still have to ignore that? Do I have to ignore that as an employee and say, I'm not going to listen to you, doctor. Instead, to save my job, my federal property here, I'm going to have to cooperate with the government. I think that it's a dangerous, I think it would be a very bad precedent for future cases. Thank you. Thank you, Mr. Fisher. The case is taken under submission.